# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

UNITED COAL COMPANY, LLC,
**Employer Below, Petitioner**

**FILED
August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-440**          (JCN: 2020020111)

JOSHUA PLUMLEY,
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner United Coal Company, LLC, ("United") appeals the October 8, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Joshua Plumley timely filed a response.[1] United did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's orders, which 1) denied the addition of sacrococcygeal disorder and disease of spinal cord to the claim as compensable conditions; 2) denied authorization for a thoracic MRI and a cervical MRI; and 3) closed the claim for temporary total disability ("TTD") benefits.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Plumley filed an Employees' and Physicians' Report of Occupational Injury or Disease dated March 6, 2020, for an occupational injury that occurred on February 29, 2020. Mr. Plumley indicated that he was working as a scoop operator when he injured his back pulling a curtain. The physician's section of the claim application was completed by a medical provider at MedExpress on March 6, 2020. The provider indicated Mr. Plumley

---

[1] United is represented by H. Dill Battle III, Esq. Mr. Plumley is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

[2] The claim administrator's order was affirmed insofar as it denied the addition of lumbar spondylosis and strain of the thoracic wall to the claim as compensable conditions. Thus, these diagnoses are not at issue in the instant appeal.

1

had sustained an occupational injury resulting in a lumbar sprain. By claim administrator order dated March 16, 2020, the claim was held compensable for lumbar strain.

Prior to the compensable injury, on June 29, 2010, Mr. Plumley was treated after being struck in the head and neck by a falling rock. The assessment was a concussion with loss of consciousness, a contusion and strain of the thoracic spine, and a neck strain. On December 3, 2011, Mr. Plumley was seen by Johnny Dy, M.D., for complaints of dizziness and a faint-like spell at work. Dr. Dy assessed "[d]izziness and syncopal feeling, improved, consider related to anxiety reaction. Rule out related to transient epistaxis." Mr. Plumley was seen on September 7, 2014, and September 8, 2014, for injuries to his head and back. The injuries occurred when a 4 x 4 fell and struck him in the head at work. CT scans of Mr. Plumley's thoracic spine, pelvis, and abdomen revealed no acute abnormalities. A CT scan of his lumbar spine revealed a disc bulge at L4-L5, posterior traction spurs at L5-S1, mild osteoarthritic change in the S1 joints, and no evidence of fracture or subluxation. The assessment was contusion of the head, contusion of the upper back, and thoracic spine strain.

Returning to the compensable injury, on March 6, 2020, Mr. Plumley was seen at MedExpress for low back pain following an injury at work. Mr. Plumley reported an immediate onset of low back pain shooting down his right leg with associated numbness while pulling a curtain in the mines. Mr. Plumley also reported tingling in his left leg. X-rays of the lumbar spine revealed no acute abnormalities, and Mr. Plumley was diagnosed with a lumbar spine sprain. Mr. Plumley was given an injection, prescribed medication, and a lumbar MRI was ordered. He returned to MedExpress on March 9, 2020, and March 19, 2020, for follow-up of his lower back injury. Mr. Plumley reported that the tingling in his left leg had resolved, but he continued to have low back pain radiating down the right leg with numbness. Mr. Plumley was assessed with a lumbar sprain and placed on modified duty work, and physical therapy ("PT") was recommended.

On March 16, 2020, Mr. Plumley underwent an MRI of his lumbar spine revealing a shallow disc protrusion, an annular fissure at L5-S1, and no evidence of stenosis. Mr. Plumley returned to MedExpress for follow-up several times. On March 26, 2020, Mr. Plumley reported that he had not returned to work, his low back pain was interfering with his sleep, and his back was still sore, but the numbness and tingling in his right lower extremity had subsided. PT was recommended. The provider noted that if Mr. Plumley failed to improve with PT, another lumbar MRI might be required. Between April 2, 2020, and May 4, 2020, Mr. Plumley complained of pain and tingling in both of his hips radiating into the upper legs. Mr. Plumley's pain had worsened, and the provider instructed Mr. Plumley to stop PT until he could be evaluated by a neurosurgeon. The assessment was lumbar sprain. Mr. Plumley remained on modified duty work, and the provider requested authorization for a referral to a neurosurgeon.

2

John Schmidt, M.D., authored a neurological examination report dated May 11, 2020. Mr. Plumley reported low back pain that radiated down the right leg to below the knee, numbness in his right leg, and difficulty walking. Mr. Plumley stated that he injured his back at work while performing heavy pulling in the mines, and he quit working about one week after the injury due to the severity of his back pain. Dr. Schmidt noted that a recent lumbar MRI showed degenerative disc disease at the L5-S1 level with a modest central disc protrusion and a possible annular tear. There was no imaging evidence of lumbar instability or rupture, nerve or thecal sac compression, or destructive, neoplastic or infectious disease. Dr. Schmidt's assessment was lower back strain, unspecified disease of the spinal cord, and spondylosis without myelopathy or radiculopathy. He opined that Mr. Plumley had sustained a musculoskeletal mechanical back strain superimposed upon a degree of degenerative spondylitic arthropathy. Dr. Schmidt did not believe surgery was indicated, and he recommended referral to pain management for an epidural injection. He further recommended MRI studies of Mr. Plumley's cervical and thoracic spine to rule out myelopathic lesions in the cervical and thoracic spinal cord.

On June 4, 2020, an MRI of Mr. Plumley's thoracic spine was performed, revealing no evidence of acute thoracic spine pathology and shallow multilevel disc bulges without compressive sequelae. An MRI of Mr. Plumley's cervical spine performed on June 4, 2020, revealed the following findings: 1) mild multilevel spondylosis without advanced canal narrowing; 2) asymmetric left neural foraminal narrowing at C6-C7 and C3-C4; 3) an 8 mm nonspecific lesion at C4; and 4) no focal cord lesion.

Mr. Plumley followed up with Dr. Schmidt on June 4, 2020. Dr. Schmidt noted the recent imaging studies and concluded that Mr. Plumley sustained a chronic musculoskeletal mechanical dorsal lumbar strain superimposed upon a degree of degenerative spondylitic arthropathy and was not improving. He again stated that surgery was not indicated and recommended a referral to interventional pain management for managing Mr. Plumley's chronic pain. On September 15, 2020, Mr. Plumley was seen by Timothy Deer, M.D., who assessed lumbar and lumbosacral radiculopathy and performed a right L5-S1 lumbar transforaminal steroid injection.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Mr. Plumley on October 7, 2020. At the time of the evaluation, Mr. Plumley complained of low back pain with radiation to the right lower extremity and right leg numbness with prolonged sitting. Dr. Mukkamala diagnosed Mr. Plumley with a lumbar strain. He opined that Mr. Plumley had reached maximum medical improvement ("MMI") and could perform work at the medium physical demand level with lifting and material handling of no more than twenty-five pounds on a frequent basis, and no more than fifty pounds on an occasional basis.

3

On October 26, 2020, Mr. Plumley was seen by Mintie Pritchard, PA, who assessed lumbar sprain, lumbar disc prolapse with radiculopathy, low back pain, spasm of back muscles, strain of fascia of lower back, and annular tear of the lumbar disc. PA Pritchard recommended a nerve conduction study of Mr. Plumley's bilateral lower extremities and a second consult with a neurosurgeon. Syam Stoll, M.D., completed a physician review dated November 10, 2020. Based upon the available medical evidence, Dr. Stoll recommended that strain fascia of lower back, central disc protrusion at L5-S1, lumbar muscle spasm, low back pain, annular fissure of lumbar spine, and depressive disorder not be included as compensable diagnoses in the claim. Dr. Stoll's recommendation was based primarily upon the medical findings of Dr. Schmidt and Dr. Mukkamala.

The record contains the Encova Select Grievance Board Determination of January 20, 2021. The Grievance Board determined that the claim administrator's grievable decision denying an MRI prior to referral to a neurosurgeon should be affirmed. The Grievance Board's determination was based upon Dr. Mukkamala's medical report and Dr. Thaxton's Physician Review.

On July 20, 2021, David Soulsby, M.D., performed an IME of Mr. Plumley's compensable injury. Mr. Plumley reported low back pain that increased with activity and sitting and occasional, intermittent pain and numbness in the right lower extremity. Dr. Soulsby assessed Mr. Plumley with a lumbar sprain/strain, degenerative disc disease, and sacroiliac arthritis. Dr. Soulsby opined that Mr. Plumley had sustained an acute lumbar sprain/strain as a result of the compensable injury. He further opined that Mr. Plumley had preexisting degenerative disc disease in the cervical and lumbar regions and preexisting osteoarthritis of the sacroiliac joints, and that the diagnoses of intervertebral disc disorder with radiculopathy, lumbar back pain, muscle spasm of back, intervertebral disc degeneration of the lumbar spine, and major depressive disorder were unrelated to the compensable injury. Dr. Soulsby stated that Mr. Plumley's lower back pain was due to a combination of sacroiliac arthritis and degenerative disc disease of the lumbar spine. Mr. Plumley was found to be at MMI for the compensable diagnoses.

By decision dated December 2, 2021, the Office of Judges granted authorization for a second opinion with a neurosurgeon, a lower extremity EMG, and a lumbar MRI. By order dated June 8, 2022, the Board affirmed the Office of Judges' decision of December 2, 2021. An MRI of Mr. Plumley's lumbar spine performed on January 8, 2022, revealed no change in Mr. Plumley's lumbar spine when compared to his prior lumbar MRI study of March 16, 2020.

Mr. Plumley was seen by Robert Crow, M.D., on March 4, 2022, for the chief complaint of low back and right leg pain. Dr. Crow noted that Mr. Plumley had undergone three transforaminal epidural injections at a pain clinic with no reported relief. Mr. Plumley reported that he continued to have low back pain radiating down the right posterior leg into

4

the top of his foot and the first three toes with associated numbness and tingling. Dr. Crow noted that, on physical examination, Mr. Plumley had sacroiliac ("SI") joint pain, and he recommended a complete round of PT for the SI joint, an x-ray of the sacroiliac joint, and a right SI joint injection. The assessment was sacroiliac joint pain, low back pain, pain radiating to the right leg, paresthesia, and lumbar spondylosis. Mr. Plumley underwent an EMG study of his lower extremities on March 21, 2022, revealing mild findings of an active right L5-S1 radiculopathy.

Mr. Plumley was evaluated by neurosurgeon James Harman, M.D., on July 29, 2022. Dr. Harman noted that MRI imaging of the low back showed mild degenerative changes involving the L5-S1 disc space, and that Mr. Plumley underwent a series of injections and PT without any symptom relief.

A reopening application for TTD benefits dated October 26, 2022, was completed by Mr. Plumley and Wendy Wilson, FNP. FNP Wilson noted that: 1) Dr. Harman had diagnosed Mr. Plumley with inflammation of the SI joint; 2) Mr. Plumley was scheduled to undergo surgery; 3) Mr. Plumley was unable to work at his regular job or return to light duty work; and 4) Mr. Plumley would be temporarily and totally disabled from November 16, 2022, through February 8, 2023. By order dated November 7, 2022, the claim administrator granted Mr. Plumley's request to reopen his claim for TTD benefits and noted that benefits would begin on the date of his surgery.

Mr. Plumley underwent right SI joint fusion, performed by Dr. Harman, on November 16, 2022, for a diagnosis of right sacroiliac dysfunction. Mr. Plumley was seen by Dr. Harman for post-operative follow-up on December 2, 2022, and he reported good relief following surgery, but he continued to have some pain in his right buttock with paresthesias into the anterior right thigh. Dr. Harman ordered post-operative PT and an x-ray of Mr. Plumley's pelvis. Mr. Plumley followed up with Dr. Harman on January 13, 2023, six weeks after right SI joint fusion. He reported that he was participating in PT with some improvement. Dr. Harman recommended continued PT, and he prescribed a steroid pack to address a recent flare-up of muscle pain and inflammation in Mr. Plumley's right mid to low back area.

On March 3, 2023, Mr. Plumley followed up with Dr. Harman three months after the right SI joint fusion. Mr. Plumley reported that his pain had significantly improved, and he was quite pleased with his condition. Mr. Plumley further reported persistent numbness in the right leg and some developing numbness in the left foot. He stated that he had been working with PT for quadriceps weakness that only affected him when he was sitting. Dr. Harman recommended continued PT and a pelvis x-ray. Mr. Plumley returned to Dr. Harman on June 2, 2023, six months post right sacroiliac fusion, and he reported good pain relief following surgery. Mr. Plumley stated that his pain had improved, but he continued to complain of instability and gait dysfunction affecting his right leg. Dr. Harman opined

that Mr. Plumley had developed progressive myelopathy consisting of hyperreflexia and bilateral Hoffmann's reflexes. Dr. Harman reviewed Mr. Plumley's cervical and thoracic MRI studies from 2020 and noted that the studies revealed no significant abnormality involving the spinal cord. Based upon Mr. Plumley's progressive symptoms, Dr. Harman strongly recommended an MRI of the brain and repeat imaging studies of the thoracic and cervical spine. Dr. Harman assessed Mr. Plumley with acute myelopathy (disease of spinal cord), and he requested authorization for MRI studies of the brain, cervical spine, and thoracic spine.

Randall Short, M.D., authored physician review reports dated June 15, 2023, and June 30, 2023. Dr. Short concluded that the request for MRI studies of the cervical spine, thoracic spine, lumbar spine, and brain should be denied in the claim. Dr. Short noted that the claim was only compensable for lumbar sprain, and Mr. Plumley had been placed at MMI by Dr. Mukkamala. By grievable decision dated June 26, 2023, the claim administrator denied the request for a thoracic MRI and cervical MRI.

On July 10, 2023, Dr. Mukkamala performed a second IME of Mr. Plumley who complained of right-sided low back pain with radiation into the right lower extremity and shaking in his right lower extremity. Dr. Mukkamala noted the claim was compensable for sprain of ligaments of lumbar spine; strain of muscle, fascia, and tendon of lower back; and fusion of spine, sacral and sacrococcygeal region. Dr. Mukkamala found Mr. Plumley's compensable lumbar strain had reached MMI, and he opined that the abnormal movements reported by Mr. Plumley in his right lower extremity were not causally related to the compensable injury of February 29, 2020. By grievable decision dated July 21, 2023, the claim administrator suspended Mr. Plumley's TTD benefits based upon Dr. Mukkamala's finding that Mr. Plumley was at MMI. On July 26, 2023, the Encova Grievance Board determined that the claim administrator's grievable decision denying repeat MRI studies of the thoracic and cervical spine should be affirmed based upon the findings and recommendations of Drs. Mukkamala and Short. Mr. Plumley protested this order.

Dr. Harman completed a Diagnosis Update form dated August 15, 2023, requesting that: low back strain, sacrococcygeal disorder, disease of spinal cord, lumbar spondylosis, and strain of thoracic wall be included as compensable conditions in the claim.

Rebecca Thaxton, M.D., authored a physician review report dated August 28, 2023, concluding that Dr. Harman's request to add low back strain, sacrococcygeal disorder, disease of spinal cord, lumbar spondylosis, and strain of thoracic wall as compensable conditions should be denied. Dr. Thaxton noted that the claim was currently compensable for lumbar sprain, low back strain, and fusion of the spine, including sacral and sacrococcygeal region. Dr. Thaxton offered the following findings: 1) low back sprain was already a compensable diagnosis, and the current diagnoses in the claim also reflected SI involvement; 2) adding thoracic strain at this juncture was outside the guidelines of West

Virginia Code of State Rules § 85-20-37.2 ("Rule 20"); 3) Mr. Plumley's compensable injury had been placed at MMI; 4) disease of spinal cord is a vague diagnosis, and there was no acute disease of the spine seen on lumbar imaging; and 5) lumbar spondylosis is a degenerative condition and not considered compensable pursuant to Rule 20.

By grievable decision dated September 5, 2023, the claim administrator denied Dr. Harman's request to add sacrococcygeal disorder, disease of spinal cord, lumbar spondylosis, and strain of thoracic wall as compensable conditions. On September 26, 2023, the Encova Grievance Board determined that the claim administrator's grievable decision should be affirmed. Mr. Plumley protested this order.

On January 23, 2024, Mr. Plumley was seen by Dr. Harman, who noted that his requests for MRI imaging of the cervical, thoracic, and brain had been denied by workers' compensation. He further noted that a recent medical evaluator had opined that Mr. Plumley's symptoms were unrelated to his work injury and should not be covered under the claim. Mr. Plumley reported that his symptoms were spreading to his left leg, which had become shaky, and he also described an intermittent warm sensation in his leg. Mr. Plumley's wife described episodes in which his body seemed to spasm. Mr. Plumley further reported pain in the left low back radiating down the left hamstring and leg and to the top of the foot. Mr. Plumley also reported a new onset of erectile dysfunction. A physical examination revealed sustained ankle clonus bilaterally and bilateral Hoffmann's reflexes. Dr. Harman noted that Mr. Plumley's sustained ankle clonus had progressed since his last visit, and that Mr. Plumley was unsteady walking. In light of Mr. Plumley's progressive symptomatology, Dr. Harman recommended an MRI of the brain and repeat MRI imaging of the cervical and thoracic spine. The assessment was acute myelopathy.

Hicks Manson, M.D., performed an IME of Mr. Plumley on November 18, 2024. Based upon his medical evaluation of Mr. Plumley and a review of the available medical records, Dr. Manson provided the following findings and conclusions: 1) Mr. Plumley had only sustained a lumbar sprain as a result of the work-related injury of February 29, 2020; 2) sacrococcygeal disorder was not compensable, as the original imaging following the injury showed no injury to the sacrum or SI joint; 3) acute injuries to the SI joint or sacrum do not typically occur from lifting a heavy object; 4) the chronic pathology of Mr. Plumley's SI joint was due to degenerative changes; 5) disease of the spinal cord is not a diagnosis that would causally be related to Mr. Plumley's work-related lifting injury, and there was no imaging evidence of spinal canal narrowing or impingement; 6) although Mr. Plumley did have clonus of the right lower extremity, it was medically unlikely that this was caused by Mr. Plumley's work-related lifting injury; 7) lumbar spondylosis is a degenerative condition and is not caused by one-time sprain injury; 8) the medical documentation did not support a finding that Mr. Plumley had injured his thoracic spine on February 29, 2020; 9) Mr. Plumley's compensable lumbar sprain was at MMI and required no further treatment; 10) there was no indication for a lumbar MRI; 11) Mr. Plumley's

work-related injury did not cause the sacroiliac degeneration that necessitated his sacroiliac fusion; 12) Mr. Plumley had two documented previous injuries to his spine; and 13) advanced imaging showed numerous chronic pathological changes.

On February 4, 2025, Mr. Plumley was seen by Alejandro Chavez, M.D., for evaluation of his back pain with radiation to the bilateral lower extremities. Mr. Plumley reported painful back spasms with exertion; bilateral lower extremity pain and weakness, right greater than left; difficulty walking, which required occasional use of a cane; and an intermittent warm, tingling feeling in his groin. A neurological examination revealed decreased sensation to light touch in the distal left lower extremity to the ankle, decreased pinprick bilaterally in the wrists and ankles, upper extremity tremors when resistance was applied, and sustained clonus and Hoffmann's reflexes in the bilateral lower extremities, right worse than left. Dr. Chavez assessed chronic low back pain, a neuromuscular disorder, a lumbar spine injury, right leg paresthesias, left leg paresthesias, and paresthesia. Dr. Chavez opined that Mr. Plumley's clinical findings pointed toward a likely etiology of a chronic spinal cord injury. Dr. Chavez recommended repeat imaging of the cervical spine, medication, and follow-up with his primary neurosurgeon in the near future.

Dr. Manson authored an addendum report dated August 15, 2025. Dr. Manson disagreed with Dr. Chavez's diagnosis of a spinal cord injury, noting that Mr. Plumley's multiple MRI studies and EMG/NCS did not suggest a spinal cord injury. Dr. Manson further opined that additional MRI studies of the cervical and thoracic spine were unlikely to provide any more insight into Mr. Plumley's diagnosis. He again found that Mr. Plumley had only sustained a lumbar sprain as a result of the compensable injury of February 29, 2020, and he placed Mr. Plumley at MMI.

On October 8, 2025, the Board reversed the claim administrator's orders, which 1) denied sacrococcygeal disorder and disease of spinal cord as compensable conditions of the claim, 2) denied authorization for a thoracic MRI and a cervical MRI, and 3) closed the claim for TTD benefits. The Board found that a preponderance of the evidence establishes that 1) the diagnoses of sacrococcygeal disorder and disease of spinal cord are causally related to the compensable injury, 2) that the requests for repeat MRI studies of the cervical and thoracic spine are medically necessary and reasonably required for treatment of Mr. Plumley's compensable disease of the spinal cord diagnosis, and 3) that Mr. Plumley has not reached MMI or been released to return to work following the addition of compensable conditions. United now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the
> Workers' Compensation Board of Review or remand the case for further

8

proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

United argues that the Board failed to properly weigh the evidence and provide a reasonably sufficient explanation detailing how it arrived at its conclusion. United further argues that the evidence of record proved that Mr. Plumley has preexisting degenerative disease in the cervical spine, thoracic spine, and lumbar spine, all of which were objectively symptomatic and documented with medical imaging years before the current injury. Finally, United argues that the claim was properly closed and medical services aimed at treating noncompensable diagnoses were properly denied. We disagree.

Three elements must coexist in workers' compensation cases to establish compensability: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986).

The Supreme Court of Appeals of West Virginia ("SCAWV") held in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3.

9

The SCAWV clarified its position in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), holding:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id.* at 294, 879 S.E.2d at 781, syl. pt. 5.

Here, the Board found that Mr. Plumley has established by a preponderance of evidence that the diagnoses of sacrococcygeal disorder and disease of spinal cord are causally related to the compensable injury. As to the requested treatment, the Board noted that the claim does not include any diagnoses related to the cervical or thoracic spine. However, the Board found that Dr. Harman's requested authorization for repeat MRI studies of the thoracic spine and cervical spine was medically necessary and reasonably required to further evaluate and treat the now compensable spinal cord disease. Given the addition of compensable diagnoses to the claim, the Board also found that Mr. Plumley had not reached MMI for those diagnoses or been released to return to work; thus, the Board ordered that Mr. Plumley is to receive TTD benefits from the date of last payment through January 23, 2024, and thereafter as substantiated by proper evidence.

The Board found that Mr. Plumley developed persistent lower extremity instability, weakness, and gait dysfunction following the compensable injury, and there is no evidence that any of these symptoms were present prior to the compensable injury. The Board noted that the record contains objective clinical findings of sustained ankle clonus bilaterally and bilateral Hoffmann reflexes following the compensable injury, and there is no evidence that any of these clinical findings were present prior to the compensable injury. The Board further noted that Mr. Plumley's treating neurosurgeon related the diagnosis of disease of spinal cord to the compensable injury, and that there is no evidence of record to indicate that this diagnosis or any of the symptoms related to the diagnosis predated the compensable injury. The Board found that Dr. Manson's findings related to this diagnosis are not consistent with the weight of the evidence of record.

The Board found that there is no evidence that Mr. Plumley was diagnosed with sacrococcygeal disorder prior to the compensable injury, or that he had persistent symptoms of severe low back pain with associated pain, numbness, and tingling in his

10

lower extremities prior to the compensable injury. Thus, the Board found that Mr. Plumley's sacrococcygeal disorder constitutes a discrete new injury within the meaning of *Gill* and *Moore*. Further, the Board found that Dr. Harman causally related the diagnosis to the compensable injury, and his opinion on that point is credible. The Board specifically noted that, although United submitted evidence showing that Mr. Plumley sustained a head and neck injury in 2010, a fainting spell in 2011, and a thoracic spine strain in 2014, there is no evidence of a preexisting sacrococcygeal condition or preexisting sacrococcygeal symptoms. Thus, the Board found that the *Moore* presumption had not been rebutted.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Plumley has established by a preponderance of evidence that the diagnoses of sacrococcygeal disorder and disease of spinal cord are causally related to the compensable injury. Further, we conclude that the Board was not clearly wrong in finding that repeat MRI studies of the thoracic spine and cervical spine were medically necessary and reasonably required to further evaluate and treat the compensable spinal condition. Finally, we conclude that the Board was not clearly wrong in finding that Mr. Plumley is entitled to further TTD benefits given the addition of compensable diagnoses to the claim, and that Mr. Plumley has not been found to be at MMI nor has he been released to work following the addition of those diagnoses.

Further as the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's orders, which 1) denied the addition of sacrococcygeal disorder and disease of spinal cord to the claim as compensable diagnoses; 2) denied authorization for a thoracic MRI and a cervical MRI; and 3) closed the claim for TTD benefits.

Accordingly, we affirm the Board's October 8, 2025, order.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White